WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
TELEPHONE: 202-719-7000
FAX: 202-719-7049

ANTHONY H. SON, BAR NO. 190478
ason@wileyrein.com

KING & KELLEHER, LLP
Four Embarcadero Center, Seventeenth Floor
San Francisco CA 94111
TELEPHONE: 415-781-2888
FAX: 415-781-3011

EDWARD V. KING, BAR NO. 85726
evking@kingandkelleher.com

Attorneys for Plaintiff, ZIONS BANCORPORATION

2010 AUG -9 P 2:15

EMC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZIONS BANCORPORATION,<br>Plaintiff,<br>v.<br>U.S. ETHERNET INNOVATIONS, LLC<br>Defendant | Case No. CV 10 3481<br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Zions Bancorporation ("Zions" or "Plaintiff") by and through its attorneys, alleges as follows:

1. This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §§101, *et seq.*, seeking declaratory judgment that no valid claim of United States Patent Numbers 5,307,459 ("'459 patent"), 5,299,313 ("'313 patent"), 5,434,872 ("'872 patent") and 5,732,094 ("'094 patent") (collectively, "patents-in-suit") are infringed by Zions, that the patents-in-suit are invalid, and that the patents-in-suit are unenforceable due to inequitable conduct.

## PARTIES

2. Plaintiff Zions Bancorporation is a Utah corporation that maintains its principal place of business at One South Main Street, Salt Lake City, Utah 84111.

3. Upon information and belief, Defendant U.S. Ethernet Innovations, LLC ("USEI") is a Texas limited liability corporation with a principal place of business at 719 West Front Street, Suite 122, Tyler, Texas 75702.

## JURISDICTION AND VENUE

4. Zions brings this complaint against USEI pursuant to the patent laws of the United States, Title 35 of the United States Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202.

5. This Court has subject matter jurisdiction over this action, which arises under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

6. Venue is proper in this judicial district based on 28 U.S.C. §§ 1391(b)-(d) and/or 1400(b).

7. On information and belief, USEI is subject to this Court's specific and general personal jurisdiction consistent with the principles of due process and/or the California Long Arm Statute.

## INTRA-DISTRICT ASSIGNMENT

8. This is an Intellectual Property Action and is excepted from intra-district assignment under Local Rule 3-2(c). This action is filed in the San Francisco Division of the Northern District of California because, as set forth in Paragraphs 17 – 18, below, a previously filed patent infringement action that Zions believes is a Related Case under Local Rule 3-12(b) was assigned to Judge Vaughn Walker in the San Francisco Division.

## PATENTS-IN-SUIT

9. Upon information and belief, the '459 Patent, entitled "Network Adapter with Host Indication Optimization," was issued on April 26, 1994 to 3Com Corporation, the assignee of the named inventors Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo. A

true and correct copy of the '459 Patent is attached hereto as Exhibit A.

10. Upon information and belief, the '872 Patent, entitled "Apparatus for Automatic Initiation of Data Transmission," was issued on July 18, 1995 to 3Com Corporation, the assignee of the named inventors Brian Petersen, David R. Brown, and W. Paul Sherer. A true and correct copy of the '872 Patent is attached hereto as Exhibit B.

11. Upon information and belief, the '094 Patent, entitled "Method for Automatic Initiation of Data Transmission," was issued on March 24, 1998 to 3Com Corporation, the assignee of the named inventors Brian Petersen, David R. Brown, and W. Paul Sherer. A true and correct copy of the '094 Patent is attached hereto as Exhibit C.

12. Upon information and belief, the '313 Patent, entitled "Network Interface with Host Independent Buffer Management," was issued on March 29, 1994 to 3Com Corporation, the assignee of the named inventors Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo. A true and correct copy of the '313 Patent is attached hereto as Exhibit C.

13. Upon information and belief, the patents-in-suit are currently assigned to USEI.

## EXISTENCE OF AN ACTUAL CONTROVERSY

14. Zions Bancorporation is a financial holding company and registered under the Bank Holding Act of 1956, as amended. Zions Bancorporation and its subsidiaries own and operate eight commercial banks. Zions Bancorporation and its subsidiary and affiliate banks focus on providing community banking services.

15. USEI purports to be the owner and licensor of the "Essential Ethernet Patent Portfolio," including the '459 patent, '872 patent, '094 patent, and '313 patent. USEI has represented to Zions that the patented technology was developed by 3Com Corporation in the 1990s and is "utilized in many day-to-day business activities within corporations, including, internet connections, data transmission, retail transactions, corporate transactions, networked security system cameras, point of sale information, and inventory management systems.

16. Upon information and belief, on January 7, 2003, 3Com Corporation, the original assignee and owner of the patents-in-suit, filed a complaint in the District of Delaware against D-Link Systems, Inc. alleging that certain computer components known as network adapters or

network interface controllers made, used, sold or imported by D-Link infringed at least the '459, '872, and '094 patents (*3Com Corporation v. D-Link Systems, Inc.*, 1:03-cv-014-GMS (D. Del.)). The District of Delaware action was transferred to the Northern District of California (*3Com Corporation v. D-Link Systems, Inc., et al.*, 3:03-cv-02177 VRW (N.D. Cal.) ("NDCA Action"). Realtek Semiconductor Corporation intervened in the NDCA Action.

17. From 2003 through 2008, 3Com Corporation pursued the NDCA Action, resulting in a jury verdict against Realtek Semiconductor Corporation. 3Com Corporation and Realtek subsequently settled their dispute, including a fully paid-up license to the patents.

18. Upon information and belief, on or about May 29, 2009, 3Com Corporation entered into a Patent Sale Agreement with Parallel Technology, LLC, wherein Parallel Technology would acquire the certain patents and patent rights from 3Com Corporation, including the patents-in-suit.

19. Upon information and belief, Parallel Technology, LLC is a Delaware corporation with a place of business at 12600 Deerfield Parkway, Suite 100, Alpharetta, GA 30004 and USEI's parent company.

20. On October 9, 2009, USEI filed a Complaint in the Eastern District of Texas accusing numerous computer manufacturers, Acer, Inc., Acer America Corporation, Apple, Inc., ASUS Computer International, ASUSTEK Computer Inc., Dell Inc., Fujitsu Ltd., Fujitsu America, Inc., Gateway, Inc., Hewlett Packard Co., HP Development Company LLC, Sony Corporation, Sony Corporation of America, Sony Electronics Inc., Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc. of making, using, selling, offering to sell and/or importing computer systems that allegedly infringe the '459, '872, '094, and '313 patents (*U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.*, Civil Action No. 6:09-cv-448 (E.D. Tex. Oct. 9, 2009) ("Acer Lawsuit").

21. On or about November 6, 2009, USEI sent a letter to Zions Bancorporation alleging that it is the "owner and licensor of the Essential Ethernet Patent Portfolio." The November 6 letter also referred to prior enforcement actions related to the patent portfolio, including the NDCA Action and the Acer Lawsuit. With respect to the Acer Lawsuit, USEI

stated:

> "USEI has retained Coughlin Stoia Geller Rudman Robbins, LLP, the largest and most successful plaintiff's law firm in the world, to assist in its enforcement efforts. In that regard, USEI recently filed a patent infringement lawsuit against nine major corporations believed to be infringing the patents. However, USEI wishes to avoid additional protracted litigation with a select group of companies utilizing the technology, by offering a license to the patents outside of litigation."

Further, USEI stated that it had already licensed "a number of major corporations" and that Zions could also obtain a license for a significant upfront payment. In addition, "in an effort to avoid costly and time-consuming litigation," USEI offered Zions a "pre-litigation" discount if a licensed was signed before December 31, 2009. A true and correct copy of the November 6, 2009 letter is attached as Exhibit E.

22. Coughlin Stoia Geller Rudman Robbins LLP is one of the law firms listed as counsel of record for USEI on the Complaint filed in the Acer Lawsuit.

23. On March 10, 2010, USEI filed a Complaint in the Eastern District of Texas accusing numerous retail defendants, including AT&T Inc.; Barnes & Noble, Inc.; Claire's Stores, Inc.; J. C. Penney Company, Inc.; Sally Beauty Holdings, Inc.; and Home Depot U.S.A., Inc. of making, using, selling, offering to sell and/or importing "technology" claimed by the '459, '872, '094, and '313 patents (*U.S. Ethernet Innovations, LLC v. AT&T Inc., et al.*, Civil Action No. 6:10-cv-086 (E.D. Tex. Mar. 10, 2010) ("AT&T Lawsuit"). Shortly thereafter, USEI amended the Complaint in the AT&T Lawsuit to add eight defendants, including Ann Taylor Stores, Harley-Davidson, Kirkland's, Macy's, New York & Company, Radioshack, Rent-A-Center, and The Dress Barn.

24. Coughlin Stoia Geller Rudman Robbins LLP is one of the law firms listed as counsel of record for USEI on the Complaint filed in the AT&T Lawsuit.

25. In a press release dated May 19, 2010 announcing the addition of the eight defendants in the AT&T Lawsuit, USEI's Chief Executive Officer, David A. Kennedy is quoted as stating:

> "We strongly believe that 3Com's Ethernet technologies are being used pervasively within many companies without a license," said David A. Kennedy, Chief Executive Officer of USEI. "We will continue to protect our patents from infringement through licensing and, when necessary, litigation."

A true and correct copy of the May 19, 2010 press release is attached as Exhibit F.

26. On June 17, 2010, outside counsel for USEI, the law firm of Robbins Geller Rudman & Dowd LLP(fka Coughlin Stoia Geller Rudman Robbins LLP, the same law firm identified as counsel of record for USEI in the Acer Lawsuit and the AT&T Lawsuit) sent a letter to Zions indicating that the alleged infringement of U.S. Ethernet Innovations, LLC's Ethernet Patent Portfolio was referred to them for handling. The letter demanded a formal response from Zions by July 1, 2010 and that failure to respond by that deadline would be assumed to be an indication that "[Zions has] no desire to resolve this matter amicably." A true and correct copy of the June 17, 2010 letter is attached as Exhibit G.

27. As a result of USEI's actions described above, Zions believe that USEI will file a suit for infringement of the patents-in-suit.

28. Upon information and belief, Zions does not infringe one or more valid claims of the patents-in-suit.

29. Upon information and belief, one or more claims of the patents-in-suit are invalid.

30. Upon information and belief, the patents-in-suit are unenforceable due to inequitable conduct.

31. Upon information and belief, Zions has not violated any of USEI's purported rights and is not liable to USEI, in law or equity.

32. An actual controversy exists between Zions and USEI concerning whether Zions infringes one or more valid claims of the patents-in-suit, and whether one or more claims of the patents-in-suit are valid, and whether one or more of the patents-in-suit are unenforceable due to inequitable conduct. Accordingly, Zions now seeks a declaratory judgment that one or more claims of the patents-in-suit are invalid and/or not infringed by Zions and that one or more of the patents-in-suit are unenforceable.

///

///

///

**FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE PATENTS-IN-SUIT**

33. Zions hereby restates and realleges the allegations set forth in Paragraphs 1-33 and incorporate them by reference.

34. Upon information and belief, one or more claims of the patents-in-suit are invalid and void because the claimed inventions do not satisfy the requirements for patentability under Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

35. A judicial declaration as to whether the claims of the patents-in-suit are invalid under one or more of the statutory provision identified above is necessary and appropriate at this time so that Zions can ascertain its rights and duties with respect to the parties and with regard to designing, developing, manufacturing, marketing, and selling its products and its use of products that USEI alleges incorporate its patented technology.

**SECOND CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE PATENTS-IN-SUIT**

36. Zions hereby restates and realleges the allegations set forth in Paragraphs 1-36 and incorporates them by reference.

37. Upon information and belief, Zions has not and does not infringe, directly, contributorily, and/or by inducement, either literally or under the doctrine of equivalents, one or more valid claims of the patents-in-suit.

38. A judicial declaration as to whether Zions infringes one or more valid claims of the patents-in-suit is necessary and appropriate at this time so that Zions can ascertain its rights and duties with respect to the parties and with regard to designing, developing, manufacturing, marketing, and selling its products and its use of products that USEI alleges incorporate its patented technology.

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

## DECLARATORY JUDGMENT THAT THE PATENTS-IN-SUIT ARE UNENFORCEABLE DUE TO INEQUITABLE CONDUCT

39. Zions hereby restates and realleges the allegations set forth in Paragraphs 1-39 and incorporate them by reference.

40. Upon information and belief, Zions alleges that each of the patents-in-suit is unenforceable by reason of the Applicants' inequitable conduct during their respective prosecutions. The basis for this allegation is detailed in the following paragraphs. In summary, during the pendency of the five applications that ultimately led to the four patents-in-suit, the same prosecution counsel, and the same Assignee, 3Com Corporation, and their agents (collectively the Applicants), filed and prosecuted at least 22 US, US PCT, and foreign applications for patents on variants of the technology at issue in this case.

41. The Applicants filed and prosecuted the following 17 patent applications in addition to the four patents-in-suit:

a. International Patent Application PCT/US1993/07027, based on the '313 Patent ('313 PCT);

b. European Patent Application No. 0696462, based on the '313 PCT ('313 EP);

c. International Patent Application PCT/US1993/07060, based on the '872 Patent ('872 PCT);

d. European Patent Application No. 0606466, based on the '872 PCT ('872 EP);

e. International Patent Application PCT/US1993/07056, based on the '459 Patent ('459 PCT);

f. European Patent Application No. 0607412, based on the '459 PCT ('459 EP);

g. U.S. Patent No. 5,319,752 ('752 Patent);

h. International Patent Application PCT/US1993/08866, based on the '752 Patent ('752 PCT);

i. European Patent Application No. 0660995, based on the '752 PCT ('752 EP);

j. U.S. Patent No. 5,392,406 ('406 Patent);

k. International Patent Application PCT/US1993/08840, based on the '406 Patent ('406 PCT);

l. U.S. Patent No. 5,530,874 ('874 Patent);

m. International Patent Application PCT/US1993/12652, based on the '874 Patent ('874 PCT);

n. European Patent Application No. 0682791, based on the '874 PCT ('874 EP);

o. U.S. Patent No. 5,517,627 ('627 Patent);

p. International Patent Application PCT/US1994/09723, based on the '627 Patent ('627 PCT); and

q. U.S. Patent No. 5,412,782 ('782 Patent).

42. Many of these patent applications were identified as related to the applications that led to the patents-in-suit, yet their co-pendency was not disclosed to the examiners of the applications for the patents-in-suit. In most instances, the examiners in the patents-in-suit were not the examiners on the other related applications and had no way of knowing of their co-pendency.

43. During the prosecution of these related applications, many references were cited that disclosed limitations of the claims of the patents-in-suit, and thus would have been of interest to the examiners of the patents-in-suit had they been disclosed. In fact, between the applications for the patents-in-suit and these related, yet undisclosed, other applications, over 60 prior art references were cited in one or more applications. Yet, during the prosecution of the applications that led to the asserted '313, '459, and '872 Patents, the Applicants failed to cite even a single reference. And, during the prosecution of the application that led to the '094 Patent, the Applicants continued in their non-disclosure of references cited in related cases, submitting information disclosure statements that contained only a fraction of the 60-plus references that had been cited among the 22 related applications.

44. Moreover, during the prosecution of the related applications, many references were cited against various combinations of elements claimed to be novel in the patents-in-suit, and, in a number of instances, claims drawn to those combinations were rejected. As noted,

most of these references were not disclosed during the prosecutions of the patents-in-suit. Neither was there disclosure of the rejections in parallel prosecutions of combinations that were material to pending claims of the applications that led to the patents-in-suit. Taken collectively, all these prosecutions and the art cited in them, as well as the various rejections by the various examiners paint a picture of a technological landscape in which many of the claims of the patents-in-suit were anticipated and/or obvious and therefore not patentable.

45. Because the Applicants did not disclose the co-pendency of these applications, the material art cited during them, or the existence of adverse office actions by other examiners rejecting combinations claimed to be novel by the patents-in-suit, the examiners in the patents-in-suit were not aware of information that would have been material to their examination of the patents-in-suit.

46. Many of the individuals with a duty of candor during the prosecutions leading to the patents-in-suit, thus, withheld information they knew or should have known to be material to the patents-in-suit. In light of the course of conduct by which the various prosecutions were each effectively siloed from one another and in light of the failure to disclose references that other examiners had explicitly identified as invalidating claimed combinations, the Applicants engaged in inequitable conduct, which renders each of the patents-in-suit unenforceable.

47. Upon information and belief, Zions alleges that the '459 Patent is unenforceable by reason of the Applicants' inequitable conduct during the prosecution of that patent as follows:

a. Application No. 07/920,898 (the '459 Application), which ultimately led to the '459 Patent, was filed on July 28, 1992 on behalf of named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee, 3Com Corporation. Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the owner and acted as prosecution counsel throughout. The '459 Patent issued on April 26, 1994.

///

The '872 Patent, PCT, and EP Applications

b. 3Com, 3Com's prosecution counsel, Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy, and their agents (the Applicants) committed inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to the '872 Patent.

c. Application No. 07/920,893 (the '872 Application), which ultimately led to the '872 Patent, was filed on the same date by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '459 Application (collectively, the '872 Applicants).

d. Ultimately, a third of the '459 named inventors (Sherer) was added as a named inventor on what became the '872 Patent.

e. PCT Application PCT/US1993/07060 (the '872 PCT) claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '459 Application. The European Patent Application EP0606466 (the '872 EP) based on the '872 PCT was filed on February 25, 1994, and lists three of the named inventors listed in the '459 Application (Petersen, Brown, and Sherer).

f. The '459 Application was reviewed by a different examiner than the '872 Application, the '872 PCT, and the '872 EP.

g. The '459 and '872 Patents' disclosures overlap to a significant extent. For example, both applications claim inventions involving beginning frame-processing operations prior to the complete buffering of frame data and using a frame buffering threshold to trigger such concurrent frame-processing operations.

///

h. In his Notice of Allowability of October 14, 1993, the examiner of the '459 Patent stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, *inter alia*, the claimed network frame transfer apparatus in which the data frame is transferred between a network transceiver and a host computer via a buffer and threshold logic is utilized to count the data transferred to and from the buffer and further in which an alterable storage location is provided which contains a threshold value and a counter, coupled to the buffer memory, is compared to the threshold value and an indication signal is generated and sent to the host computer responsive to the comparison.

i. During the prosecution of the '872 Patent, claims containing all of these limitations except for the "indication signal" were rejected as anticipated and/or obvious in light of multiple prior art references in the office action of October 26, 1993 (The October 26, 1993 Rejection).

j. At least the following references were reviewed by the '872 examiner, were cited in support of the October 26, 1993 Rejection, and were material to, but not disclosed during, the prosecution of the '459 Patent: U.S. Patents 5,043,981 (Firoozmand *et al.*); 4,860,193 (Bentley); 4,258,418 (Heath); 4,715,030 (Koch); 5,195,093 (Tarrab); and 5,210,749 (Firoozmand) (collectively, the '872-459 References).

k. On or about March 2, 1994, Petersen and Brown, named inventors of the '459 Application filed a declaration stating that they were informed that the pending claims 1, 3, 6 and 11 in '872 Application were rejected as being anticipated by Firoozmand, *et al.*.

l. The '872-459 References were material to, but not disclosed during, prosecution of the '459 application. The '872-459 References were determined by the '872 examiner to disclose singly or in obvious

combination all limitations determined by the '459 examiner to be missing from the prior art except the "indication signal" claimed in the '459 Patent, and that latter limitation was, in fact, disclosed by, inherent in, and/or obvious in light of one or more of the '872-459 References.

m. During the prosecution of the '459 Patent, five of the '872-459 References (Firoozmand *et al.*, Koch, Heath, Tarrab, and Firoozmand) were cited *again* to at least the assignee and prosecution counsel of the '872 Application in the December 7, 1993 '872 PCT International Search Report (the '872 ISR). These references were identified *again* by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

n. All of the '872 Applicants were participants in the prosecutions of the '872 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent. At least the '872 assignee and prosecution counsel were participants in the prosecutions of the '872 PCT, and the '872 EP and were persons with a duty of candor in the prosecution that led to the '459 Patent.

o. The '872 Applicants knew of the materiality to the '459 prosecution of (i) the copendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 Rejection, and (iii) the '872-459 References, because they knew that the '872 examiner had found these references to disclose most features of the combination which they had claimed to be novel in the '459 Patent and which the '459 examiner itemized in his notice of allowance. Further, they knew or should have known that the missing limitation was disclosed by, inherent in, or obvious in light of one or more of the '872-459 References or at a minimum that a reasonable examiner would have wanted to review the '872-459 References to make his own determination on that point.

p. Additionally, and for the same reasons, at least the assignee of the '459 Patent and prosecution counsel were aware of the materiality of the '872 ISR to the '459 prosecution.

q. None of the co-pendency of the '872 Application and the '872 PCT, the '872 EP, nor the October 26, 1993 Rejection and the '872-459 References were disclosed in the '459 Prosecution.

r. The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection, and the '872-459 References were therefore concealed from the examiner in the '459 Prosecution by the '872 Participants with knowledge of the materiality of those references and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '752 Patent and PCT Applications</u>

s. The Applicants committed further acts of inequitable conduct during the prosecution of the '459 Patent by additionally failing to disclose the applications, rejections, and references related to the U.S. Patent 5,319,752 (the '752 Patent).

t. Application No. 07/947,773 (the '752 Application), which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '459 Application (the '752 Applicants).

u. PCT Application PCT/US1993/08866 (the '752 PCT) claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '459 and '752 Applications.

///

v. The '459 Application was reviewed by a different examiner than the '752 Application and the '752 PCT.

w. The '459 and '752 Patents' disclosures overlap to a significant extent. For example, the '752 Patent discloses a network adapter including "threshold logic for generating an early receive indication signal when a portion of [a] data frame is received," the very invention claimed in several claims of the '459 Patent.

x. The '752 Application states that it is related to the co-pending '459 Application, but no mention of the '752 Application is made in the '459 Application.

y. On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 Application.

z. At least the following references were reviewed by the '752 examiner and were material to, but not disclosed during, prosecution of the '459 Patent: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fischer) (collectively the '752 References).

aa. All of these references relate to the limitations of the '459 claims that call for generating a signal. Fischer relates to the limitations of the '459 claims that call for an indication signal and an interrupt signal. Yamamoto, Kozlik, and Fischer relate to the limitations of the '459 claims that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '459 claims that call for network interface logic. Kozlik, Chiu, and Fischer relate to the limitations of the '459 claims that call for transferring a data frame. Francisco relates to the limitations of the '459 claims that call for an alterable storage location containing a threshold value. Chiu relates to the limitations of the '459 claims that call for a counter for counting the amount of data transferred.

bb. While the '459 prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

cc. The '752 References would have been material because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

dd. All of '752 Applicants had a duty of candor in the prosecution that led to the '459 Patent.

ee. All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '752 Application. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '459 prosecution of (i) the copendency of the '752 PCT, and (ii) the '752 Rejections, the '752 ISR, and the '752 References. That is, they knew of the *similarity in disclosure* between the '459 and '752 Patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

ff. However, neither the co-pendency of the '752 Application or the '752 PCT, nor the '752 Rejections, the '752 ISR, or the '752 References were disclosed in the '459 Prosecution.

gg. The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '459 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

///

The '406 Patent and PCT Applications

hh. The Applicants committed further acts of inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,392,406 (the '406 Patent).

ii. Application No. 07/947,055 (the '406 Application), which ultimately led to the '406 Patent, was filed on September 18, 1992 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 Application (the '406 Applicants).

jj. PCT Application PCT/US1993/08840 (the '406 PCT) claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 and '406 Applications.

kk. The '459 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

ll. The '459 and '406 Patents' disclosures overlap to a significant extent.

mm. On November 9, 1993 the '406 examiner issued a rejection (the '406 Rejection) of the '406 Application.

nn. At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during, prosecution of the '459 Patent: U.S. Patents 4,447,878 (Kinnie); 4,672,570 (Benken); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671 (Kelly); and 5,185,876 (Nguyen) (collectively the '406-459 References).

oo. All of these references relate to the limitations of the '459 Patent that call for generating a signal. Benken, Kinoshita, and Pleva relate to the

limitations of the '459 Patent that call for an indication signal. Benken, Brooks, Kinoshita, Pleva, and Nguyen relate to the limitations of the '459 Patent that call for an interrupt signal. Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, and Nguyen relate to the limitations of the '459 Patent that call for a buffer memory. Benken and Brooks relate to the limitations of the '459 Patent that call for transferring a data frame. Benken and Pleva relate to the limitations of the '459 Patent that call for a network interface logic. Benken relates to the limitations of the '459 Patent that call for transfer descriptors.

pp. All of the '406-459 References reviewed by the '406 examiner were therefore material to the '459 Application, but none of them were disclosed by the '459 Applicants during prosecution of the '459 Patent.

qq. While the '459 prosecution was ongoing, all ten of the '406-459 References were cited *again* to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

rr. The '406-459 References would have been material because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ss. All of the persons who were participants in the prosecutions of the '406 Patent had a duty of candor in the prosecution that led to the '459 Patent. At least the '406 assignee and prosecution counsel were participants in the prosecutions of the '406 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

tt. The '406 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '406 Application and '406 PCT. At least the '406 assignee and prosecution counsel knew of

facts sufficient to establish the materiality of the November 9, 1993 Rejection, the '406 ISR, and the '406-459 References. That is, all of the '406 Applicants knew of the *similarity in disclosure* between the '459 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-459 References relevant to the '406 Application and the '406 PCT, and had rejected the '406 Application.

uu. However, the co-pendency of the '406 Application and the '406 PCT, the November 9, 1993 Rejection, the '406 ISR, and the '406-459 References were not disclosed in the '459 Prosecution.

vv. The '406 Application, the '406 PCT, the November 9, 1993 Rejection, and the '406-459 References were therefore concealed from the examiner in the '459 prosecution by the '406 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '874 Patent and PCT Applications</u>

ww. The Applicants committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications related to the U.S. Patent 5,530,874 (the '874 Patent).

xx. Application No. 08/012,561 (the '874 Application), which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '459 Application (the '874 assignee, prosecution counsel, Sherer, and Peterson are referred to herein as the '874 Applicants.)

yy. PCT Application PCT/US1993/12652 (the '874 PCT) claims priority to the '874 Application (having substantially the same disclosure) and was

filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '874 Application and '459 Application.

zz. The '459 Application was reviewed by a different examiner than the '874 Application and the '874 PCT.

aaa. The '459 and '874 Patents' disclosures overlap to a significant extent.

bbb. The '874 Application states that it is related to the co-pending '459 Application, but no mention of the '874 Patent is made in the '459 Application.

ccc. All of the '874 Applicants were participants in the prosecution of the '874 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent. At least the '459 assignee and prosecution counsel were participants in the prosecutions of the '874 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

ddd. The '874 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '874 Application and the '874 PCT. That is, they knew of the *similarity in disclosure* between the '459 and '874 disclosures.

eee. However, neither the co-pendency of the '874 Application nor of the '874 PCT, were disclosed in the '459 Prosecution.

fff. The co-pendency of the '874 Application and the '874 PCT were therefore concealed by the '874 Applicants from the examiner in the '459 prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

///

///

The '627 Patent and PCT Applications

ggg. The Applicants committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 Patent).

hhh. Application No. 08/113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application (collectively the '627 Applicants).

iii. The '459 Application was reviewed by a different examiner than the '627 Application.

jjj. The '459 and '627 Patents' disclosures overlap to a significant extent.

kkk. All of the participants in the prosecutions of the '627 Patent were persons with a duty of candor in the prosecution that led to the '459 Patent.

lll. The '627 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '627 Application. That is, they knew of the *similarity in disclosure* between the '459 and '627 disclosures.

mmm. On February 7, 1994, the '627 Applicants filed an Information Disclosure citing, *inter alia*, the following references: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen) (collectively the '627-459 References). As detailed above, the '627-459 References relate to the limitations of the '459 Patent and would have been material. In fact, their citation in the February 7, 1994 IDS represents no less than the third time they were cited in a related application prior to the issuance of the '459 Patent.

nnn. All of the persons who were participants in the prosecutions of the '627 Patent had a duty of candor in the prosecution that led to the '459 Patent.

ooo. The '627 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the '627-459 References. That is, all of the '627 Applicants knew of the similarity in disclosure between the '459 and '627 disclosures, and at least the '627 assignee and prosecution counsel knew that the '627-459 References had been cited in the '627 Application.

ppp. However, the co-pendency of the '627 Application and the '627-459 References were not disclosed in the '459 Prosecution.

qqq. The '627 Application and the '627-459 References were therefore concealed from the examiner in the '459 prosecution by the '627 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '313 Patent, PCT, and EP Applications

rrr. The Applicants committed inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to the '313 Patent.

sss. Application No. 07/921,519 (the '313 Application), which ultimately led to the '313 Patent, was filed on the same date by the same counsel on behalf of the same named inventors (Peterson, Sherer, Brown, and Lo) and the same assignee as the '459 Application (collectively, the '313 Applicants).

ttt. PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 Application (having substantially the same disclosure) and was

filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Brown, Sherer, and Lo) and the same assignee as the '459 Application. The European Patent Application EP0696462 (the '313 EP), based on the '313 PCT, was filed on February 25, 1994, and lists all four of the named inventors listed in the '459 Application.

uuu. The '459 Application was reviewed by a different examiner than the '313 PCT and the '313 EP. Although the '459 Application was reviewed by the same examiner as the '313 Application, the Federal Circuit has held that the duty to cross-cite material information between related applications still holds in such situations. *See e.g.*, McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897, 925 (Fed. Cir. 2007).

vvv. On September 21, 1993, the '313 Application received a Notice of Allowance in which the examiner cited U.S. Patent No. 4,672,570 (Benken).

www. Although the '459 Applicants cited the copendency of the '313 Application upon the filing of the '459 Application on July 28, 1992, the '459 Applicants did not disclose to the examiner of the '459 Application either the September 21, 1993 Allowance or the Benken reference.

xxx. The '459 and '313 Patents' disclosures overlap to a significant extent, as evidenced by the '459 Applicants' disclosure of the '313 Application as a related copending application.

yyy. The Benken reference was material to, but not disclosed during, prosecution of the '459 Application. The Benken reference discloses various limitations of the claims of the '459 Application, such as a buffer memory, network interface logic, host interface logic, transfer descriptor logic, and upload logic.

zzz. On November 26, 1993, during the prosecution of the '459 Patent, the following references were cited in the '313 International Search Report

(the '313 ISR): U.S. Patents 4,672,570 (Benken); 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

aaaa. The '313 ISR References were material to, but not disclosed during, the prosecution of the '459 Application. The '313 ISR References relate to the limitations of the '459 Patent. For example, Harris relates to the limitations of the '459 Patent that call for a buffer memory, generating a signal, generating an interrupt, and network interface logic. Schwan relates to the limitations of the '459 Patent that call for a buffer memory, generating a preemptive signal, and interrupt signals. Farrell relates to the limitations of the '459 Patent that call for a buffer memory, network interface logic, generating a signal, and an interrupt signal.

bbbb. All of the '313 Applicants were participants in the prosecution of the '313 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent.

cccc. The '313 Applicants knew of the materiality to the '459 prosecution of (i) the Benken reference, (ii) the co-pendency of the '313 PCT and '313 EP Applications, (iii) the '313 ISR, and (iv) the '313 ISR References, yet failed to disclose any of these actions or references in the '459 Prosecution.

dddd. The (i) Benken reference, (ii) co-pendency of the '313 PCT and '313 EP Applications, (iii) '313 ISR, and (iv) '313 ISR References were therefore concealed from the examiner in the '459 Prosecution by the '313 Participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

///

///

The '782 Patent Application

eeee. The Applicants committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the application, rejection, and references related to U.S. Patent 5,412,782 (the '782 Patent).

ffff. Application No. 07/907,946 (the '782 Application), which ultimately led to the '782 Patent was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '872 Application (Sherer and the assignee collectively referred to as the '782 Applicants).

gggg. The '459 Application was reviewed by a different examiner than the '782 Application.

hhhh. The '459 and '782 Patents' disclosures relate to substantially the same subject matter. For example, the '782 Patent discloses "adjusting the TX start threshold to an amount larger than the packet, so transmission will not begin until the packet is completely copied into the adapter" and that "the adapter may be programmed to generate early receive interrupts when only a portion of a packet has been received from the network, so as to decrease latency." These disclosures directly relate to the heart of the alleged invention claimed in the '459 Patent.

iiii. U.S. Patent 4,768,190 (Giancarlo), cited by the '782 Examiner in the January 14, 1994 Office Action Rejection, was material to, but not disclosed during, prosecution of the '459 Patent.

jjjj. Giancarlo relates to the limitations of the '459 Patent that call for generating a signal, an interrupt signal, a buffer memory, and/or transferring a data frame.

///

kkkk. All of the '782 Applicants were participants in the prosecution of the '782 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent.

llll. The '782 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the copendency of the '782 Application. At least the '782 assignee knew of facts sufficient to establish the materiality of the Giancarlo reference and the January 14, 1994 Rejection. That is, all of the '782 Applicants knew of the similarity in disclosure between the '459 and '782 disclosures, and at least the '782 assignee knew that the Giancarlo reference had been cited in the '782 Application.

mmmm. However, the copendency of the '782 Application and the Giancarlo reference were not disclosed in the '459 Prosecution.

nnnn. The '782 Application and the Giancarlo reference were therefore concealed from the examiner in the '459 prosecution by the '782 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>Intel 82586 local area network coprocessor</u>

oooo. Intel 82586 local area network coprocessor and the documentation describing it ("the Intel 82586") is material prior art as defined by 37 C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-3 Invalidity Contentions served on USEI on or about June 4, 2010 in the Acer Lawsuit (hereby incorporated by reference as if more fully set forth herein), the Intel 82586 and the documentation describing it separately and collectively invalidates all of the asserted claims in the '459 patent. Accordingly, a reasonable examiner would have found that the Intel 82586 and the documentation describing it, alone or in combination with other information, was material to the prosecution of the '459 Patent

because, at a minimum, it established a prima facie case of unpatentability for all claims in the '459 patent.

pppp. Further, the Intel 82586 was known by the inventors, their counsel, and 3Com (collectively "Applicants") to be prior art material to the application which led to the '459 Patent, because the Intel 82586 is recited as relevant prior art in the Background of the Invention section of the '459 Application.

qqqq. On information and belief, some or all of Applicants had full knowledge of the operation and features of the Intel 82586, because they were able to summarize certain aspects of the operations and features of the Intel 82586 in the Background Section of the '459 Patent.

rrrr. The prosecution history of the '459 Patent demonstrates that Applicants withheld the source of their information concerning the operation and functionality of the Intel 82586 from the PTO during the filing and prosecution of the '459 Application because only very limited disclosure was made of the Intel 82586 chip in the background of the '459 Patent and no documentation describing its features or functionality was provided to the PTO, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '459 Patent.

ssss. As is set forth more fully in Defendants' P.R. 3-3 Invalidity Contentions served on USEI on or about June 4, 2010 in the Acer Lawsuit, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '459 Patent.

tttt. A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability

for the '459 Application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation demonstrating these inconsistencies, but withheld by some or all of Applicants, was not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

uuuu. The prosecution history of the '459 Patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of the prior art, and specifically the features and operation of the Intel 82586.

vvvv. The Applicants obtained allowance of claims then pending in the '459 Application as a result of not fully disclosing the Intel 82586 and withholding documentation concerning its features and functionality, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

wwww. The '459 patent is therefore unenforceable due to inequitable conduct.

xxxx. There is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '459 patent to issue.

yyyy. None of the above identified references that were not cited during the prosecution of the '459 Patent, despite a duty to do so, were cumulative to the prior art made of record during the prosecution of the '459 Patent. In fact, only three prior art references were cited during the entire prosecution of the '459 Patent - namely, U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper). These references were cited by the '459 examiner in the October 14, 1993 Notice of Allowance without any analysis as to which claim limitations they disclosed. Thus,

neither the applicants nor the prosecuting attorney could reasonably have believed that any of the above identified references were cumulative, since no claim analysis existed in the record of the '459 Patent prosecution.

zzzz. The references identified in the foregoing paragraphs 48(b)-(yyyy), in addition to being material to the prosecution of the '459 Patent as stated herein, are further material as invalidating the prior art with respect to the '459 Patent as set forth more fully in Defendants' Local Patent Rule 3-3 Invalidity Contentions served on USEI on or about June 4, 2010 in the Acer Lawsuit, the contents of which are incorporated by reference in this answer as if more fully set forth herein.

## INEQUITABLE CONDUCT AS TO U.S. PATENT NO. 5,434,872

48. Zions hereby restates and realleges the allegations set forth in Paragraphs 1-48 and incorporate them by reference.

49. Upon information and belief, Zions alleges that the '872 Patent is unenforceable by reason of the Applicants' inequitable conduct during the prosecution of that patent. The basis for allegation is as follows:

a. The '872 Application, which ultimately led to the '872 Patent, was filed on the same date by Mark. A Haynes on behalf of named inventor Brian Peterson and David R. Brown and named assignee 3Com Corporation as the '459 Application. Ultimately, a third inventor (W. Paul Sherer) was added as a named inventor on what became the '872 Patent.

<u>The '459 Patent, PCT, and EP Applications</u>

b. 3Com, 3Com's prosecution counsel, Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy, and their agents (the Applicants) committed inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '459 Patent.

c. The '459 Application which ultimately led to the '459 Patent, was filed on the same date by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '872 Application.

d. PCT Application PCT/US1993/07056 (the '459 PCT) was filed on July 27, 1993, and claims priority to the '459 Application by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '872 Application and the '459 Application. The European Patent Application EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

e. The '872 Application was reviewed by a different examiner than the '459 Application, the '459 PCT, and the '459 EP.

f. The '872 and '459 Patents' disclosures overlap to a significant extent.

g. During prosecution of the '459 Application, the following references were cited: U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper) (collectively the '459 References). These references were cited to the '872 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

h. All of the '459 References reviewed by the '459 examiner were material to, but not disclosed during prosecution of, the '872 Patent.

i. These references relate to the limitations of the '872 claims that call for supplying a signal. All references relate to the limitations of the '872 claims that call for a buffer memory. All references relate to the limitations of the '872 claims that call for a network interface means. All references relate to the limitations of the '872 claims that call for transferring data of frames. All references relate to the limitations of the '872 claims that call for a transmit logic. Gulick 1 and Gulick 2 relate to the limitations of the '872 claims that call for an underrun control logic.

Finally, and perhaps most importantly, all references relate to the limitations of the '872 claims that call for *threshold determination* of an amount of data.

j. While the '872 prosecution was pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993 '459 International Search Report (the '459 ISR), but still were not disclosed in the '872 prosecution.

k. In the Response of February 23, 1994, during prosecution of the '872 Patent, at least the prosecution counsel of the '872 Application disingenuously argued that:

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter. This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. ***Firoozmand, et al. does not use the transmit threshold determination*** *for a first frame in a transmission sequence. Rather, this threshold determination is only used in succeeding frames. See* Firoozmand, at al. column 10, line 53-68. (emphasis added)

l. The '459 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references. For example, these references are related to using the *threshold determination* for *any* frame. The '872 Examiner would have, therefore, considered these references

highly material because they could have been combined with Firoozmand *et al.* or other references cited during the '872 prosecution to make obvious the claims of the '872 Application directed to CSMA/CD.

m. Moreover, during prosecution of Application No. 08/715,253 (the '094 Application), the continuation of the '872 Application, the same examiner of both the '872 and '094 Applications discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure," and cited it in the Office Action of March 19, 1996 in the '094 prosecution. However, because Gulick 1 was never brought to his attention, the examiner did not have the opportunity to consider it prior to issuance of the '872, despite its high materiality.

n. During prosecution of the '459 EP, the following references, *inter alia*, were cited: "Early Interrupt for Disk Controller," IBM Technical Disclosure Bulletin, vol. 25, no. 9, February 1983, p. 4703 (IBM) and 5,179,709 (Bailey) (collectively the '459 EP References). These references were cited to the '872 Applicants in the April 27, 1994 Supplementary European Search Report ('459 EP SSR).

o. These references relate to the limitations of the '872 Patent. IBM relates to the limitations of the '872 Patent that call for an alterable threshold value. Bailey relates to the limitations of the '872 Patent that call for a buffer memory and means, coupled with the buffer memory, for monitoring the transferring of data to the buffer memory to make a threshold determination of an amount of data transferred to the buffer memory.

p. At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

///

q. At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '459 Application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '459 PCT and the '459 EP and (ii) the '459 ISR, the '459 References, the '459 EP SSR, and the '459 EP References. That is, at least Petersen, Brown, and Sherer and the '459 assignee and prosecution counsel knew of the *similarity in disclosure* between the '459 and '872 Patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

r. However, neither the co-pendency of the '459 Application, the '459 PCT, or the '459 EP, nor the '459 ISR the '459 References, the '459 EP SSR, or the '459 EP References were disclosed in the '872 Prosecution.

s. The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, the '459 Rejections, the '459 References, the '459 EP SSR, and the '459 EP References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '752 Patent, PCT, and EP Applications</u>

t. The Applicants committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '752 Patent.

u. The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee

as the '872 Application.

v. The '752 PCT was filed on September 17, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '752 Applications. The '752 EP, based on the '752 PCT, was filed on September 17, 1993.

w. The '872 Application was reviewed by a different examiner than the '752 Application, the '752 PCT, and the '752 EP.

x. The disclosures of the '872 and '752 Patents overlap to a significant extent.

y. At least the following '752 References reviewed by the '752 examiner were material to but not disclosed during prosecution of the '872 Patent: Yamamoto, Kozlik, Francisco, Chiu, and Fischer.

z. All of these references relate to the limitations of the '872 claims that call for supplying a signal. Yamamoto, Kozlik, and Fischer relate to the limitations of the '872 claims that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '872 claims that call for a network interface means. Kozlik, Chiu, and Fischer relate to the limitations of the '872 claims that call for transferring data of frames.

aa. While the '872 prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

bb. The '752 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

cc. At least Petersen, the '752 assignee, and the prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

dd. At least Petersen, the assignee, and the prosecution counsel of the '752

Application knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '752 Application. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '752 PCT and the '752 EP and (ii) the '752 Rejections, the '752 ISR, and the '752 References. That is, at least Petersen, and the '752 assignee, and prosecution counsel knew of the *similarity in disclosure* between the '872 and '752 disclosures, and at least the '752 assignee and prosecution counsel knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

ee. However, neither the co-pendency of the '752 Application, the '752 PCT, and the '752 EP nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '872 Prosecution.

ff. The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '406 Patent and PCT Applications</u>

gg. The Applicants committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

hh. The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown,) and the same assignee as the '872 Application.

ii. The '406 PCT was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee as the '872 and '406 Applications.

jj. The '872 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

kk. The disclosures of the '872 and '406 Patents overlap to a significant extent.

ll. On November 9, 1993 and the April 26, 1994 the '406 examiner issued rejections (the '406 Rejections) of the '406 Application.

mm. At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during, prosecution of the '872 Patent: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken); 4,841,435 (Papenberg); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); and 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively the '406-872 References).

nn. All of the '406-872 References reviewed by the '406 examiner were material to but not disclosed during prosecution of the '872 Patent.

oo. These references relate to the limitations of the '872 Patent that call for supplying a signal. Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, and Nguyen relate to the limitations of the '872 Patent that call for a buffer memory. Benken relates to the limitations of the '872 Patent that call for transferring data of frames. Benken and Banks relate to the limitations of the '872 Patent that call for a network interface device. Benken relates to the limitations of the '872 Patent that call for transmit descriptors.

pp. While the '872 prosecution was ongoing, all ten of the '406-872

References were cited again to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

qq. The '406-872 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

rr. At least Petersen, Brown, and the '406 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

ss. At least Petersen, Brown, and the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of the copendency of the '406 Application. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '406 PCT, and (ii) the '406 Rejections, the '406 ISR, and the '406-872 References. That is, at least Petersen, Brown, and the '406 assignee and prosecution counsel knew of the *similarity in disclosure* between the '872 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-872 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

tt. However, neither the co-pendency of the '406 Application and the '406 PCT, nor the '406 Rejections, the '406 ISR, and the '406-872 References were disclosed in the '872 Prosecution.

uu. The '406 Application, the '406 PCT, the '406 Rejections, and the '406-872 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of

an apparent other reason for their non-disclosure.

The '627 Patent and PCT Applications

vv. The Applicants committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 Patent).

ww. Application No. 08/113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application (collectively the '627 Applicants).

xx. PCT Application PCT/US1994/09723 (the '627 PCT) was filed on August 24, 1994 and claims priority to the '627 Application by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '627 Applications.

yy. The '872 Application was reviewed by a different examiner than the '627 Application and the '627 PCT.

zz. On December 19, 1994, the '627 examiner issued a rejection of the '627 Application.

aaa. At least the following references were reviewed by the '627 examiner and were material to, but not disclosed during, the prosecution of the '872 Patent: 4,131,940 (Moyer); 4,447,878 (Kinnie); 4,654,781 (Schwartz); 4,663,732 (Robinson); 4,672,570 (Benken); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671 (Kelly); 5,185,876 (Nguyen); and 5,274,763 (Banks) (collectively the '627-872 References).

bbb. The '627 Applicant cited ten of the '627-872 References (Kinnie, Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen)

in an Information Disclosure Statement filing of February 7, 1994 ('627 IDS).

ccc. The '627-872 References relate to the limitations of the '872 claims that call for supplying a signal. Moyer, Robinson, Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, and Nguyen relate to the limitations of the '872 claims that call for a buffer memory. Benken relates to the limitations of the '872 claims that call for transferring data of frames. Benken and Pleva relate to the limitations of the '872 claims that call for a network interface device. Benken relates to the limitations of the '872 claims that call for transmit descriptors.

ddd. While the '872 prosecution was pending, seven of the '627-872 References (Vo, Benken, Moyer, Schwartz, Hirasawa, Robinson, and Banks) were cited *again* to at least the assignee and prosecution counsel of the '627 Application in the February 13, 1995 '627 PCT International Search Report (the '627 ISR). At least Vo, Benken, Moyer, and Banks were identified by the searching authority as of particular relevance.

eee. The '627-872 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

fff. All of the '627 Applicants had a duty of candor in the prosecution that led to the '872 Patent.

ggg. All of the '627 Applicants knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the '627 PCT, (ii) the December 19, 1994 Rejection, and (iii) the '627 IDS, '627 ISR, and '627-872 References. That is, at least the '627 assignee and prosecution counsel knew that the '627 examiner had found

the '627-872 References relevant to the '627 Application and the '627 PCT and had twice rejected the '627 Application.

hhh. However, neither the co-pendency of the '627 Application and the '627 PCT, nor the '627 Rejections, the '627 ISR, and the '627-872 References were disclosed in the '872 Prosecution.

iii. The '627 Application, the '627 PCT, the '627 Rejections, the '627 ISR, and the '627-872 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

<u>The '874 Patent, PCT, and EP Applications</u>

jjj. The Applicants committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '874 Patent.

kkk. The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '872 Application.

lll. The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '874 Application and '872 Application.

mmm. The '872 Application was reviewed by a different examiner than the '874 Application, the '874 PCT and '874 EP.

nnn. The disclosures of the '872 and '874 Patents overlap to a significant extent.

ooo. At least the following references reviewed by the '874 examiner were material to, but not disclosed during, the prosecution of the '872 Patent: U.S. Patents 3,905,025 (Davis); 4,349,872 (Fukasawa); 4,807,117 (Itoku); 4,847,752 (Akashi); 4,987,535 (Takayama); 5,146,595 (Fujiyama); 5,161,228 (Yasui); 5,179,704 (Jibbe); 5,193,195 (Miyazaki); 5,283,904 (Carson), and 5,349,667 (Kaneko) (collectively the '874-872 References).

ppp. On September 20, 1994 and May 19, 1995, the '874 examiner issued rejections (the '874 Rejections) of the '874 Application.

qqq. The '874-872 references relate to the limitations of the '872 Patent that call for supplying a signal. Davis, Fukasawa, Akashi, Takayama, Miyazaki, Carson, and Kaneko relate to the limitations of the '872 Patent that call for a buffer memory.

rrr. While the '872 prosecution was pending, three of the '874-872 References (Akashi, Takayama, and Fukasawa) were cited *again* to at least the assignee and prosecution counsel of the '874 Application in the August 1, 1994 '874 PCT International Search Report (the '874 ISR). These references were identified *again* by the searching authority as of particular relevance. Likewise, while the '872 Application was pending, two additional '874-872 References (Yasui and Jibbe) were cited *again* to at least the assignee and prosecution counsel of the '874 Application in the June 19, 1995 '874 PCT Preliminary Examination Report (the '874 PCT Exam).

sss. These '874-872 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ttt. At least Petersen and the '874 assignee and prosecution had a duty of candor in the prosecution that led to the '872 Patent.

uuu. At least Petersen and the '874 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '874 Application. At least the '874 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the copendency of the '874 PCT and the '874 EP and (ii) the '874 ISR, the '874 PCT Exam, and the '874-872 References. That is, least Petersen and the '874 assignee and prosecution counsel knew of the *similarity in disclosure* between the '872 and '874 disclosures, and the '874 assignee and prosecution counsel knew that the '874 examiner had found the '874-872 References relevant to the '874 Application and the '874 PCT, and had twice rejected the '874 Application. However, neither the co-pendency of the '874 Application and the '874 PCT, '874 EP, nor the '874 Rejections, the '874 ISR, the '874 PCT Exam, and the '874-872 References were disclosed in the '872 Prosecution. The '874 Application, the '874 PCT, the '874 EP, the '874 Rejections, the '874 ISR, the '874 PCT Exam, and the '874-872 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

<u>The '313 Patent, PCT, and EP Applications</u>

vvv. The Applicants committed inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '313 Patent.

www. Application No. 07/921,519 (the '313 Application), which ultimately led to the '313 Patent, was filed on the same date by the same counsel on behalf of the same named inventors (Peterson, Sherer, and Brown) and the same assignee as the '872 Application (collectively, the '313

Applicants).

xxx. PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Sherer, and Brown) and the same assignee as the '872 Application. The European Patent Application EP0696462 (the '313 EP) based on the '313 PCT was filed on February 25, 1994, and lists all three of the named inventors listed in the '872 Application.

yyy. The '872 Application was reviewed by a different examiner than the '313 Patent, PCT, EP applications.

zzz. On September 21, 1993, the '313 Application received a Notice of Allowance in which the examiner cited U.S. Patent No. 4,672,570 (Benken).

aaaa. Although the '872 Applicants cited the copendency of the '313 Application upon the filing of their October 11, 1994 Response to an Office Action, the '872 Applicants did not disclose to the examiner of the '872 Application either the September 21, 1993 Allowance of the '313 Patent or the Benken reference.

bbbb. The '872 and '313 Patents' disclosures overlap to a significant extent, as evidenced by the '872 Applicants' disclosure of the '313 Application as a related copending application.

cccc. The Benken reference was material to, but not disclosed during, prosecution of the '872 Application. The Benken reference discloses various limitations of the claims of the '872 Application, such as generating a signal, generating an interrupt, a buffer memory, network interface logic, host interface logic, transmit descriptor logic, and download logic.

dddd. On November 26, 1993, during the prosecution of the '872 Patent, the

following references were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,672,570 (Benken), 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

eeee. The '313 ISR References were material to, but not disclosed during, the prosecution of the '872 Application. The '313 ISR References relate to the limitations of the '872 Patent. For example, Harris relates to the limitations of the '872 Patent that call for a buffer memory, supplying a signal, and network interface means. Schwan relates to the limitations of the '872 Patent that call for a buffer memory and supplying a signal. Farrell relates to the limitations of the '872 Patent that call for a buffer memory, network interface means, and supplying a signal.

ffff. On May 2, 1994, during the prosecution of the '872 Patent, the European Patent Office issued a Supplemental European Search Report for the '313 EP ('313 EP SSR) that cited U.S. Patent No. 4,947,366 (Johnson) as a reference that was "particularly relevant if taken alone."

gggg. The Johnson reference was material to, but not disclosed during, the prosecution of the '872 Application. For example, Johnson relates to the limitations of the '872 Patent that call for a buffer memory, supplying an indication signal, and parallel read and write operations.

hhhh. All of the '313 Applicants were participants in the prosecutions of the '313 Patent and were persons with a duty of candor in the prosecution that led to the '872 Patent.

iiii. The '313 Applicants knew of the materiality to the '872 prosecution of (i) the Benken reference, (ii) the co-pendency of the '313 PCT and '313 EP Applications, (iii) the '313 ISR and '313 EP SSR, and (iv) the '313 ISR and Johnson references, yet failed to disclose any of these actions or references in the '872 Prosecution.

jjjj. The (i) Benken reference, (ii) co-pendency of the '313 PCT and '313 EP Applications, (iii) '313 ISR and '313 EP SSR, and (iv) '313 ISR and Johnson references were therefore concealed from the examiner in the '872 Prosecution by the '313 Participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for its non-disclosure.

The '782 Patent Application

kkkk. The Applicants committed further inequitable conduct during the prosecution of the '872 Patent by failing to disclose the application, rejections, and references related to U.S. Patent 5,412,782 (the '782 Patent).

llll. Application No. 07/907,946 (the '782 Application), which ultimately led to the '782 Patent, was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '872 Application.

mmmm. The '872 Application was reviewed by a different examiner than the '782 Application.

nnnn. The '872 and '782 Patents' disclosures relate to substantially the same subject matter. For example, the '782 Patent discloses "adjusting the TX start threshold to an amount larger than the packet, so transmission will not begin until the packet is completely copied into the adapter" and that "the adapter is allowed to begin packet transmission before the packet is completely transferred from the host to the adapter, which further reduces latency." These disclosures directly relate to the heart of the alleged invention claimed in the '872 Patent.

oooo. At least the following references were reviewed by the '782 examiner and